IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CYNTHIA H. HALE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 7:10cv00279 |
| v. ) | |
| ) | By: Michael F. Urbanski |
| MICHAEL J. ASTRUE, ) | United States District Judge |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Cynthia H. Hale ("Hale") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). Hale argues on appeal that the Administrative Law Judge ("ALJ") erred by failing to give controlling weight to the opinions of her treating physician, Dr. Deborah Mowery, and her treating psychologist, June Allder, Ph.D., and by failing to properly evaluate Hale's mental impairments. Having reviewed the administrative record and considered the arguments of counsel, the court concludes that this case must be remanded for further administrative proceedings, as the ALJ's decision is not supported by substantial evidence. The ALJ failed to give adequate weight to the opinions of Hale's treating doctors and to properly evaluate Hale's mental impairments. A physical consultative examination with a functional capacity evaluation is necessary to resolve conflicts in the medical evidence concerning Hale's physical residual functional capacity. Additionally, the ALJ relied on an incomplete hypothetical posed to the Vocational Expert at the administrative hearing. For these reasons, the Commissioner's Motion for Summary Judgment (Dkt. # 19) is **DENIED**, and Hale's Motion for Summary Judgment (Dkt. # 16) is **GRANTED** and the Commissioner's

decision is **REVERSED** and **REMANDED** for further administrative proceedings consistent herewith.

I

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard." Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a

2

preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"),[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

---

[1] RFC is a measurement of the most a claimant can do despite his or her limitations. See 20 C.F.R. § 404.1545(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after considering all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. § 404.1529(a).

3

## II

Hale was born in 1958, has a high school education and has taken a few college courses. (Administrative Record, hereinafter "R." at 28.) She lives with her husband, daughter and infant granddaughter. (R. 296.) She previously worked as a restaurant manager, cook, waitress and office worker. (R. 29-30.) Hale filed an application for benefits on September 13, 2006, claiming disability as of July 1, 2006. (R. 82.) The Commissioner denied her application for benefits on May 4, 2007 based on a medical records review, and this decision was confirmed on reconsideration on September 26, 2007. (R. 58, 62.) An administrative hearing was held on July 30, 2008 before an ALJ. (R. 23-51.)

In a decision issued September 16, 2008, the ALJ found that Hale had severe impairments consisting of myalgias/arthralgias/fibromyalgia, degenerative disc disease, headaches and plantar fasciitis.[2] (R. 14.) Considering these impairments, the ALJ found that Hale retained the RFC to perform a range of light exertional work, except that due to her impairments she must only occasionally climb, stoop, kneel, crouch or crawl and must never be exposed to excessive background noise. (R. 16.) Further, Hale must have only occasional interaction with co-workers and the general public and is limited to simple, routine, repetitive unskilled tasks. (R. 16.) Based on this RFC, the ALJ determined that Hale cannot perform her past relevant work. (R. 20.) However, the ALJ further determined that a significant number of jobs exist in the national and regional economies which Hale can perform. (R. 21.) Accordingly, the ALJ concluded that Hale is not disabled under the Act. (R. 21.) The Appeals Council denied Hale's request for review and this appeal followed. (R. 1-3.) Hale and the

---

[2] The ALJ found that Hale's alleged irritable bowel syndrome, sleeping difficulties, and bursitis were not severe impairments. The ALJ further found that Hale did not have a severe anxiety disorder. (R. 14.)

4

Commissioner have filed respective motions for summary judgment and the court heard oral argument on May 6, 2011.

## III

Hale argues on appeal that the Commissioner failed to give appropriate weight to the opinion of her treating physician, Dr. Mowery. A treating physician's opinion is to be given controlling weight by the ALJ if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); 20 C.F.R. § 404.1527(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations…."); SSR 96-2p. In determining the weight to give to a medical source's opinion, the ALJ must consider a number of factors, including whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. § 404.1527(d). A treating physician's opinion cannot be rejected absent "persuasive contrary evidence," and the ALJ must provide her reasons for giving a treating physician's opinion certain weight or explain why she discounted a physician's opinion. Mastro, 270 F.3d at 178; 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give to your treating source's opinion.").

5

**A.**

Hale first saw Dr. Deborah Mowery in March 2007 for a second opinion regarding her fibromyalgia pain. Dr. Mowery noted diffuse myalgic tender points and trigger points. Hale's right shoulder showed impingement, she was tender over the right AC joint and both knees showed patellar inhibition and positive patellar grind. (R. 482-83.) Hale requested a work-in appointment on April 17, 2007 due to a flare up in left leg pain (R. 484), and at her regularly scheduled appointment on April 30, 2007, Dr. Mowery diagnosed fibromyalgia syndrome, severe. (R. 486.) Examination on June 4, 2007 revealed soft tissue trigger points and tenderness points throughout the axial skeleton, tenderness over the lateral epicondyle to the right elbow with pain with resisted wrist extension and grasping, and tenderness on palpation of the lower extremities along the thighs and calf muscles with no palpable cord. (R. 488.) Later that month, notes reveal "[s]oft tissue tender points are appreciated everywhere, but particular trigger points are noted in the gluteus medius and maximus muscles bilaterally, as well as the piriformis." (R. 489.)

Dr. Mowery wrote a letter dated August 6, 2007 that documents Hale's history of fibromyalgia and failed response to treatment. The letter states Hale "has intractable myalgic pain with limitations with range, prolonged standing, sitting, and ambulation." Dr. Mowery opined that Hale "is not capable of performing any work activities and is permanently disabled. I do not believe she can sit or stand more than 15 minutes at a time, lift more than 5 pounds on an occasional basis, and [will] have difficulty with sit-to-stand and stair activity [on] more than a rare occasion." Dr. Mowery also noted Hale suffers from "fibro fog." (R. 491.)

Dr. Mowery continued to treat Hale for fibromyalgia and related pain in October and December 2007. At the latter appointment, she received trigger point injections. (R. 581.) In

6

February 2008, Dr. Mowery noted that Hale's fibromyalgia pain had been active recently. (R. 634.) She further stated that a functional capacity evaluation ("FCE") should be performed and that she "imagined about a 10-20 pound push, pull and lift is most likely all that is going to be able to be done with a 4-8 hour standing tolerance." (R. 634.) Dr. Mowery saw Hale in May and July of 2008. In October 2008, Dr. Mowery again opined that Hale was totally disabled. Once more noting that an FCE should be performed, she wrote "I do not believe she is able to stand or walk to a full 8 hour work day, but [would] require sedentary level work at 5 pound push, pull or lift most likely … and could not sit in a sustained position for more than 10-15 minutes at a time without alternating her body position."[3] (R. 661.) Dr. Mowery's examination showed significant neck muscle spasms, as well as multiple trigger points. (R. 661.)

## B.

The ALJ gave little weight to Dr. Mowery's August 6, 2007 statement that Hale cannot sit or stand more that 15 minutes, lift more than 5 pounds occasionally, and is not capable of gainful employment. (R. 19.) The ALJ wrote these statements are "not supported by the objective medical evidence and are administrative findings reserved to the Commissioner." (R. 20.) In so finding, the ALJ emphasized that two months later, on October 2, 2007, Dr. Mowery's notes indicate that Hale's stress, depression and fibromyalgia had improved with medication. (R. 20.) The ALJ further wrote "[m]ore importantly, Dr. Mowery indicated on February 20, 2008 that a functional capacity evaluation is needed to truly evaluate claimant's work ability, but indicated that claimant could probably lift/carry 10 to 20 pounds, stand/walk for 4-8 hours per day, and that she was doing fairly well on her medications." (R. 20.)

---

[3] From the record, it does not appear that Dr. Mowery ever performed an FCE. Notes from January 27, 2009 state Hale "has not been able to complete the FCE and did not get her disability." (R. 659.)

7

The ALJ's treatment of Dr. Mowery's opinions falls short of what is required by case law and the Commissioner's regulations. Dr. Mowery is the Medical Director of Rehabilitative Services at Lewis Gale Medical Center. At the time she wrote the August 6, 2007 letter, she had treated Hale five times in five months. While the ALJ correctly pointed out that Dr. Mowery's conclusory statement that Hale is permanently disabled is an opinion reserved to the Commissioner, Dr. Mowery also set forth her opinion as to Hale's functional limitations. Dr. Mowery stated she believed Hale could not sit or stand more than 15 minutes at a time, lift more than 5 pounds occasionally, and would have difficulty with sit-to-stand and stair activity. (R. 491.) The ALJ found this opinion not to be supported by the objective medical evidence, specifically referring to Dr. Mowery's February 20, 2008 statement that she believed Hale, at most, would be able to push, pull and lift 10 to 20 pounds with a 4 to 8 hour standing tolerance. (R. 634.) Indeed, the August 2007 opinion is not entirely consistent with Dr. Mowery's February 2008 statement. But it is consistent with Dr. Mowery's October 14, 2008 office notes, which the ALJ did not have the benefit of reviewing. In these notes, Dr. Mowery places Hale in sedentary level work at a 5-pound push, pull or lift, and states that she needs to alternate positions after 10 to 15 minutes of sitting. (R. 661.)

The court also notes that Dr. Mowery's February and October 2008 office notes contain only what she "believed" or "imagined" Hale's limitations to be. (R. 634, 661.) In fact, Dr. Mowery repeatedly emphasized the need for an FCE to determine Hale's functional capacity to work. (R. 634, 661.) Yet the record contains no FCE from Dr. Mowery or any other doctor. According to the regulations, a consultative examination is obtained in order to resolve any conflicts or ambiguities within the record, as well as "to secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for

8

decision." 20 C.F.R. § 404.1519a(a)(2).  A consultative examination must be ordered "when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on [the] claim."  20 C.F.R. § 404.1519(b).

Given Dr. Mowery's repeated recommendation that an FCE be performed, and given the discrepancy in her August 2007 and February 2008 opinions as to Hale's functional capacity, the court finds a physical consultative examination with a functional capacity component should have been ordered in this case.  Hale has an extended history of fibromyalgia symptoms for which she has been treated by multiple doctors.  In July 2005, Dr. Hemphill, a treating physician, noted that Hale's fibromyalgia and headaches had deteriorated and she was experiencing worsening chronic pain.  (R. 223.)  In September 2006, Dr. Lemmer assessed Hale's fibromyalgia as "moderate and unchanged."  (R. 249.)  In January 2007, Dr. Hemphill also assessed her fibromyalgia as unchanged.  (R. 458.)  In February 2007, Dr. Lemmer diagnosed Hale's fibromyalgia as "moderately severe, worsening."  (R. 276.)

Hale has also been diagnosed with degenerative disc disease, headaches and plantar fasciitis.  On January 1, 2006, an MRI of Hale's lumbar spine showed disc bulges at multiple levels, with protrusion at 4-5, but no compression of the descending nerve roots.  (R. 199.)  A March 2007 x-ray of her lumbar spine showed degenerative disc disease.  (R. 393.)  In November 2007, Dr. Charles Zelen diagnosed bilateral plantar fasciitis.  (R. 592.)  Hale testified at the administrative hearing that she suffers from both migraines and headaches.  (R. 41.)

State agency physicians Drs. McGuffin and Shahane evaluated Hale's physical impairments and determined she was capable of performing light exertional work with certain postural limitations.  However, Drs. McGuffin and Shahane only reviewed the earlier medical

9

records and did not examine Hale. Dr. McGuffin completed his RFC (physical) in May 2007, while Dr. Shahane completed her RFC (physical) in September 2007.

Further, Hale testified at the administrative hearing before the ALJ that she generally stays around the house unless she has to go to a doctor's appointment, does no housekeeping, and has no hobbies. (R. 39.) She testified that she can sit/stand for 15-20 minutes before she must change positions due to pain. (R. 33.) Although her infant granddaughter resides with her, Hale provides no child care. (R. 296.)

On this record, the court cannot find that the ALJ provided the persuasive contrary evidence needed to justify her rejection of Dr. Mowery's disability opinion. In support of her decision, the ALJ noted that prior to her alleged onset date, Hale sought treatment for her mental and physical impairments, yet still performed her past work as a restaurant cook and manager. (R. 17.) The ALJ also emphasized that Hale failed to complain of symptoms related to her alleged disabling impairments on or around her alleged onset date. She stated that Hale sought treatment on July 5 and 7, 2006, shortly after her disability onset date, yet "wanted to talk about her husband having an affair" and "did not complain of symptoms related to her alleged impairment." (R. 17.) Indeed, Dr. Hemphill's notes from July 5, 2006 state "this was mainly a counseling visit;" however, they also reveal that Hale did discuss her disabling impairments, indicating that Cymbalta has "helped with FM some." (R. 205.) The court also notes that Hale has a documented history of fibromyalgia symptoms and had been receiving treatment for the condition at the time of her alleged disability onset.

The ALJ also wrote in her opinion that Hale has not "consistently complained of symptoms related to her alleged impairments." (R. 18.) In support of this statement, the ALJ noted that Hale sought treatment on April 9, 2007, "complaining of nothing more than cramps

10

and pain in her calf," complained primarily of lower abdominal pain in a June 2007 visit and complained of sinus pain and a sore throat in July 2007, denying myalgias. (R. 18.) While the ALJ provided an accurate description of these visits, Hale's longitudinal treatment record shows a clear history of regular complaints of symptoms related to her alleged impairments. Hale has been treated for fibromyalgia by Drs. Hemphill, Lemmer and Mowery. In February 2007, Dr. Lemmer noted that Hale's fibromyalgia syndrome was moderately severe and worsening. (R. 276.) Between March 2007 and January 2009, Hale saw Dr. Mowery for complaints related to her alleged impairments, including fibromyalgia, at least 10 times. In April 2007, Dr. Mowery found her fibromyalgia was "severe." (R. 486.) Additionally, references to Hale's physical pain appear repeatedly in mental health treatment notes from Dr. Allder. In September 2006, Dr. Allder's notes state Hale's physical pain was "almost 'unbearable'" (R. 260), and there are multiple references to the fact that Hale had difficulty focusing due to her physical pain. (R. 258, 396, 397.) Notes throughout 2007 describe Hale's pain as "constant," "intense," and "unrelenting." (R. 397, 398, 464, 465, 598, 599.) In October and November 2008, Dr. Allder noted that Hale's fibromyalgia was "acting up" and she could not do basic housework or prepare meals and was "very depressed." (R. 655.) There are references in Dr. Allder's records to Hale's need to constantly change positions (R. 258), her inability to sit still due to hip and leg pain (R. 259), and her need to stand due to intense pain. (R. 465.)

     An ALJ cannot simply pick and choose only the medical evidence that supports his position. Harris v. Comm'r, No. 2:04cv513, 2005 WL 1162530, at *8 (E.D. Va. May 12, 2005); see also Switzer v. Heckler, 742 F.2d 382, 385 (7th Cir. 1984). Considering Hale's well-documented history of fibromyalgia symptoms and her treatment record with Dr. Mowery, the court cannot find that the ALJ's decision is supported by substantial evidence in this case. Dr.

11

Mowery has been Hale's treating doctor since 2007 and has noted her 20 year history of fibromyalgia and related treatment. Based on her examination of Hale and Hale's complaints of pain, Dr. Mowery opined on more than one occasion that she believes Hale cannot work and recommended an FCE be performed.

For these reasons, the court will remand this case to the Commissioner for a physical consultative examination, including a functional capacity evaluation, so that any conflicts or ambiguities in the medical evidence regarding Hale's physical residual functional capacity may be resolved.

## IV

Hale also argues that the ALJ failed to give appropriate weight to the opinion of her treating psychologist, June Allder, Ph.D., and failed to properly evaluate her mental impairments. Hale asserts the medical evidence shows her depression and anxiety are severe.

### A.

Dr. Allder completed a Medical Opinion re: Ability to do Work-Related Activities (Mental) on February 19, 2008, in which she concluded that Hale's mental abilities and aptitude to do unskilled work were seriously limited in multiple areas, including her ability to remember work-like procedures, carry out simple instructions, maintain attention for two hours at a time, make simple work-related decisions and deal with normal work stress. (R. 601-02.) Dr. Allder opined that several issues interfere with Hale's functioning, namely her level of pain, the effects of her medication, and her depression and anxiety. (R. 602.)

The ALJ gave little weight to this opinion, stating:

> Dr. Allder indicates that claimant is seriously limited in several functional areas, but is not precluded from such functional activities. Moreover, she indicates that claimant has a good ability to do the following: interact appropriately with the general public; maintain socially acceptable behavior; and adhere to basic standards of neatness and cleanliness.

(R. 20.) The ALJ's characterization of Dr. Allder's opinion is not entirely correct. Dr. Allder opined that Hale's mental ability and aptitude to perform unskilled work is "poor," meaning her ability to function is seriously limited but not precluded, in 12 out of 16 areas, which is more than the "several" areas noted by the ALJ. Hale had only a "fair" ability in the other 4 areas. She also was noted to have "poor" ability in all 4 areas of semi-skilled or skilled work. (R. 601-02.)

The ALJ is correct in stating that Dr. Allder indicated Hale's ability was "good" in three areas – the ability to adhere to basic standards of neatness and cleanliness, the ability to maintain socially appropriate behavior, and the ability to interact appropriately with the general public. However, Dr. Allder qualified this last ability by stating, "except anxiety interferes at times." (R. 603.) While the ALJ focuses on these three "good" abilities, the overwhelming majority of Dr. Allder's opinion clearly indicates Hale is seriously limited in her mental functional capacity.

Additionally, the ALJ focuses on Dr. Allder's statement as to Hale's physical functional capacity - that she cannot stand or sit for more than 30 minutes. Dr. Allder did not treat Hale for any physical impairment. While her opinion as to Hale's physical abilities may not be entitled to great weight, the ALJ has not provided the persuasive contrary evidence necessary to reject Dr. Allder's opinion regarding Hale's mental abilities. Nor did she discharge her duty of providing reasons for discounting Dr. Allder's opinion as to Hale's mental functional capacity. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); 20 C.F.R. § 404.1527(d)(2).

13

The record shows that Hale began receiving psychotherapy treatment for pain and depression at least as early as 2003. (R. 275.) These early records document her struggles with depression and anxiety. (R. 265, 266, 267, 268, 269, 270, 271, 272, 273, 274, 275.) In July 2006, Dr. Hemphill diagnosed an adjustment disorder with mixed features. (R. 205.)

Hale began seeing Dr. Allder in August 2006, and her treatment notes contain multiple references to situational stressors in Hale's life, including her husband and marriage, as well as Hale's physical pain complaints. Hale's functioning was noted to be "fair" (R. 261, 262), and Hale admitted in September 2006 that she had some suicidal ideations but no plan. (R. 260.) Dr. Allder noted that Hale had difficulty focusing due to physical pain and made numerous references to Hale's pain level in her treatment notes. (R. 257, 258, 259, 396, 397, 398, 464, 465.) In March 2007, Dr. Allder stated Hale "continues to be in pain most of the time," and in July she noted that Hale was very focused on health issues and often had to stand due to intense pain. (R. 397, 465.) Dr. Allder's notes from October and November 2007 reflect Hale was "in constant pain" and "ongoing relentless pain." These notes reveal Hale was experiencing "brain fog" and had difficulty expressing herself; was very depressed and overwhelmed with pain; and had difficulty doing routine chores. (R. 598, 599.) In February and July 2008, she was noted by Dr. Allder to be anxious and depressed. (R. 597, 651.) In October and November 2008, Dr. Allder noted that Hale's fibromyalgia was "acting up" and she could not do basic housework or prepare meals and was "very depressed." (R. 655.)

Treatment notes from other physicians also document Hale's depression and anxiety. For instance, Dr. Mowery diagnosed Hale with anxiety and depression in June and October 2007. (R. 488, 489, 492.) Dr. Mowery's notes from February 2008 state Hale's depression was not well controlled (R. 634), and in July 2008, Dr. Mowery noted Hale "still has problems with

14

depression." (R. 663.) Additionally, Dr. Jonathan Bern concluded in December of 2007 that Hale's chest pain "almost certainly represents panic attacks or manifestation of anxiety" and stated that she is markedly improved with Ativan. (R. 584.)

Jeanne Buyck, Ph.D., conducted a mental consultative evaluation on March 1, 2007. Hale cried throughout the evaluation and reported difficulty with sleep, appetite, concentration, and panic attacks. (R. 295.) Dr. Buyck diagnosed major depressive disorder, recurrent, moderate, as well as a pain disorder associated with both a general medical condition and psychological factors. (R. 297.) She pegged Hale's Global Assessment of Functioning at 50.[4] (R. 298.) Dr. Buyck noted that Hale's ability to understand and remember simple one and two step commands and to perform repetitive work was within normal limits, but she was moderately limited in her ability to maintain attention and concentration, and her ability to handle work-related stressors was significantly impaired. (R. 298.)

On March 27, 2007, state agency physician Dr. Howard Leizer, Ph.D., conducted a mental RFC and a psychiatric review. Dr. Leizer diagnosed major depressive disorder and found moderate restrictions in Hale's activities of daily living, ability to maintain social functioning and ability to maintain concentration, persistence and pace. (R. 310.) However, Dr. Leizer opined "[c]laimant is able to meet the basic demands of competitive work on a sustained basis despite the limitations resulting from her impairment." (R. 316.) On September 24, 2007, state agency physician Dr. Julie Jennings also conducted a mental RFC and psychiatric review. Dr. Jennings diagnosed major depressive disorder and found the same moderate restrictions as Dr.

---

[4] The Global Assessment of Functioning, or GAF, scale ranges from 0 to 100 and considers psychological, social and occupational functioning on a hypothetical continuum of mental health illness. Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. Text Rev. 2000) (hereinafter "DSM-IV-TR"). A GAF of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). DSM-IV-TR at 34.

15

Leizer in Hale's activities of daily living, ability to maintain social functioning and ability to maintain concentration, persistence and pace. (R. 561, 568.) Just as Dr. Leizer did, Dr. Jennings opined "claimant is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment." (R. 473.)

The ALJ did not satisfy her statutory burden to consider all the medical evidence and enunciate her reasoning and rationale for discounting the treating psychologist's opinion in favor of opinions from the consultative examiner and the reviewing state agency psychologists. Accordingly, the case must be remanded for further consideration.

## B.

Hale further argues that the medical evidence shows her depression and anxiety are severe impairments and the Commissioner erred by not finding her mental impairments severe at step 2 of the sequential evaluation process. The Commissioner counters that the ALJ properly evaluated Hale's mental impairments, arguing as follows:

> Since the ALJ found several impairments in this case, she proceeded through the remaining evaluation and considered the issue of functional limitations presented by plaintiff's mental impairments in her RFC analysis, making any 'error' at step 2 clearly inconsequential. Even assuming that an error occurred, such an error would be harmless because plaintiff's mental health limitations were properly accounted for in the ALJ's residual functional capacity finding.

(Dkt. # 20, at 18-19.) As outlined below, however, Hale's mental health limitations were not properly accounted for in the ALJ's RFC assessment.

To qualify as "severe," an impairment or combination of impairments must significantly limit a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. § 404.1520(c). Basic work activities include certain physical functions (e.g., walking, sitting, standing); seeing, hearing, or speaking; understanding, carrying out, and remembering simple

16

instructions; use of judgment; responding appropriately to usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521. Impairments must also last or be expected to last for a continuous period of at least twelve months to qualify as severe. 20 C.F.R. § 404.1520(a)(4)(ii); see also 42 U.S.C. § 423(d)(1)(A).

As regards Hale's mental impairments, the ALJ's decision is a bit murky. The ALJ did not list either anxiety or depression as one of Hale's severe impairments, which included myalgias/athralgias/fibromyalgia, degenerative disc disease, headaches, and plantar fasciitis. (R. 14.) The ALJ plainly noted in her explanation that "claimant does not have a severe anxiety disorder," but she went on to state: "Counseling and treatment records document a depressive disorder with symptoms including sadness, concerns regarding her marriage, communication skills and conflict resolution, but there is insufficient evidence to support a finding of a severe anxiety impairment which could be expected to last for 12 months or more." (R. 14.) While the ALJ acknowledged Hale's depressive disorder, she spoke only to whether Hale's anxiety was considered severe.

Additionally, it appears that the ALJ may have intended to include limitations imposed by Hale's depression in her RFC assessment, writing "the limitations imposed by [anxiety] would not exceed those imposed by her depression, as set forth below in the residual functional capacity analysis." (R. 14.) Indeed, in her RFC determination, the ALJ found Hale to be limited to no more than occasional interaction with co-workers and the general public and limited to simple, routine and repetitive unskilled tasks. (R. 16.) Later, when discussing Hale's depression, the ALJ stated, "[n]otes from the counseling sessions do not set forth signs or symptoms of an impairment which could preclude all work-related activities." (R. 18.)

17

It is unclear from the ALJ's decision whether she intended to include Hale's depression as a severe impairment. A reviewing court should not have to guess as to what impairments the Commissioner considers to be severe. Nor does the court view such a determination to be inconsequential. It seems incongruous for the ALJ to have adopted the opinions of Dr. Buyck and the reviewing state agency physicians, all of whom diagnosed Hale with major depressive disorder (R. 297, 303, 473), and not to have found Hale's depression to be severe. This is especially true given the fact that Dr. Buyck pegged Hale's GAF at 50, indicating serious symptoms, and in light of Hale's longstanding treatment for depression and the diagnoses and limitations set forth by Drs. Allder and Mowery.

It is also difficult to reconcile the ALJ's assertion that she gave "significant weight" to Dr. Buyck's opinion with the ALJ's conclusion that Hale's anxiety was not severe. While the ALJ stated she gave significant weight to Dr. Buyck's opinion, she does not mention Dr. Buyck's finding that Hale is impaired significantly in her ability to handle work-related stressors in the RFC determination, nor does the ALJ explain why she failed to fully incorporate that finding in her hypothetical question to the vocational expert ("VE").

The Commissioner argues that the ALJ's RFC determination accounted for any mental impairment by "limiting plaintiff to only occasional interaction with co-workers and the public [as well as] simple, routine, repetitive, unskilled tasks…." (Dkt. # 20, at 19.) The problem with this argument is that this limitation is not entirely consistent with the hypothetical the ALJ posed to the VE. The transcript of the administrative hearing shows that the ALJ did not include any limitation on Hale's interaction with co-workers in her hypothetical to the VE. (R. 46.) Rather, the hypothetical only contained the requirement that Hale be limited to "simple, routine, repetitive unskilled work that involves occasional interactions with the general public." (R. 46.)

18

It is unclear, therefore, whether the VE's vocational opinion would have changed had the additional limitation involving co-workers been posed to her. Moreover, the ALJ did not address Hale's ability to handle other potential work-related stressors, such as her ability to respond appropriately to supervision, co-workers, and usual work situations, as well as deal with changes in a routine work setting.[5]

The ALJ must take into account all the specific limitations of a claimant when crafting a hypothetical question to a VE. Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989). Otherwise, the relevance and value of the VE's testimony is greatly diminished. Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005) (quoting Walker, 889 F.2d at 50). Failure to consider all the claimant's functional limitations and reliance upon an incomplete hypothetical when reaching a judgment constitutes an error of law. Hancock v. Barnhart, 206 F. Supp. 2d 757, 767 (W.D. Va. 2002).

For these reasons, this case will be remanded for further consideration of Hale's mental impairments. The ALJ's reliance on an incomplete hypothetical provides an additional reason for remand. On remand, the ALJ should craft a hypothetical question which includes all of Hale's mental limitations.

V

Although the court concludes that the record does not provide substantial evidence to sustain the ALJ's conclusion that Hale is not disabled, the court is unable at the same time to recommend an outright award of benefits. The record is in need of further development with regards to Hale's physical and mental impairments. Therefore, the court directs the

---

[5] According to SSR 96-8p, the mental activities required by competitive, remunerative, unskilled work include: understanding, remembering and carrying out simple instructions; making judgments that are commensurate with the functions of unskilled work-i.e., simple work related decisions; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in the work setting.

19

Commissioner to obtain a physical consultative examination which includes a functional component addressing whether Hale can work. The court further directs the Commissioner to consider Dr. Buyck's opinion that Hale's ability to handle work-related stressors is significantly impaired and craft an appropriate hypothetical to the VE reflecting the totality of Hale's physical and mental impairments. That is not to say, however, that at the conclusion of the administrative process that a finding of disability will result. Ultimately, the decision of the Commissioner may well be apt, but that cannot be determined without obtaining a physical FCE, further considering Hale's mental impairments, and posing an appropriate hypothetical to the VE.

For the reasons set forth above, the Commissioner's Motion for Summary Judgment (Dkt. # 19) is **DENIED**, Hale's Motion for Summary Judgment (Dkt. # 16) is **GRANTED,** and the Commissioner's decision is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this opinion.

The Clerk is directed to send a copy of this Memorandum Opinion and accompanying Order to counsel of record.

    Entered: October 5, 2011

    */s/ Michael F. Urbanski*

    Michael F. Urbanski
    United States District Judge